# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Malik Noaman Alkamel,                                Case No. 22-cv-1630 (ECT/ECW)

                    Plaintiff,

v.                                                   **REPORT AND RECOMMENDATION**

B. Eischen,
*FPC-Duluth Warden*,

                    Respondent.

---

This matter is before the undersigned United States Magistrate Judge on Petitioner Malik Noaman Alkamel's ("Petitioner" or "Alkamel") Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 ("Petition") (Dkt. 1).  This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For the reasons discussed below, the Court recommends that the Petition be denied.

## I.    BACKGROUND

On October 31, 2019, Alkamel was sentenced to 63 months' imprisonment in the District of Minnesota with three years' supervised release to follow and was committed on January 29, 2020.  (Dkt. 7-1, Gov't. Ex. A at 2-3 (Alkamel's Public Inmate Data); *see also* Dkt. 7-3, Gov't. Ex. C at 1-3 (Alkamel's Criminal Judgment).)[1]  Alkamel's statutory release date via good conduct time ("GCT") is July 18, 2024 and his projected release

---

[1]        Unless stated otherwise, references to page citations refer to the CM/ECF pagination.

date is July 19, 2023 with 365 days of First Step Act ("FSA") time credits applied.  (Dkt. 8-1, Gov't. Ex. A. at 2-3.)  As of May 20, 2022, Alkamel had earned 108 days of GCT and had 283 days of GCT earned and projected.  (*Id.* at 3.)

On June 21, 2022, Alkamel filed a Petition under 28 U.S.C. § 2241 in this Court against Respondent Eischen—the Warden of the Federal Prison Camp in Duluth, Minnesota ("FPC-Duluth"), where Alkamel was incarcerated at the time the Petition was filed.  (Dkt. 1 at 1.)  The Federal Bureau of Prisons' ("BOP") online Inmate Locator now lists Alkamel as at "Minneapolis RMM," suggesting that he is at some type of reentry facility being managed by the Residential Reentry Management field office in Minneapolis, MN.  *See Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 9, 2023).

On July 1, 2022, the Court directed Respondent to file an answer to the Petition and provided Alkamel the opportunity to file a reply within thirty days of when the answer is filed.  (Dkt. 4 at 1-2.)  On August 1, 2022, Respondent filed a Response to the Petition, along with the declarations of Veronica Hodge, who is employed as a Management Analyst by the BOP, and Kyja Winger, the Unit Manager at FPC-Duluth. (Dkt. 6; Dkt. 7 ¶ 1; Dkt. 8 ¶ 1.)  On August 19, 2022, Alkamel filed a self-styled Motion to Respond to the Declaration of Kyla Winger, Response Dated July 22, 2022, wherein he stated his disagreement with certain declarations made by Winger and opposed Respondent's Response.  (Dkt. 10.)  On September 6, 2022, the Court issued an order stating that the document would be considered by the Court and noted that although

captioned as a motion, the filing contained a substantive reply to Respondent's Response.[2]  (Dkt. 11.)  Accordingly, this matter is ripe for review.

A.    **Alkamel's Petition**

Alkamel alleges four grounds in the Petition.  In Ground One, Alkamel states that his "[e]arned credits are not being recognized as reducing [his] sentence" as provided by the FSA and alleges that his "[t]otal [FSA] credits have not yet been fully calculated nor are they being shown as included in Percent of Statutory Term Served."  (Dkt. 1 at 6-7.) Ground Two asserts that the BOP "added earned Good Credit Time as each year is served recognizing those credits against ones percentage of time served" and as supporting facts, states "Petitioner Alkamel's earned GCT credits have been applied for the years 2019, 2020, 2021 & 2022.  These credits are included in petitioners [sic] term served calculation."  (*Id.* at 7.)  In Ground Three, Alkamel contends that his "Earned First Step Act credits for the years 2019, 2020, 2021 & 2022 are not included in the BOP's calculation of time served."  (*Id.*)  Alkamel alleges in Ground Four that the BOP had not "calculated or recorded petitioners [sic] full earned First Step Act credits."  (*Id.* at 8.)  As his requested relief, Alkamel states: "[r]equire the Bureau of Prisons to follow the 'First Step Act of 2018', current federal law, and implement and apply all earned credits. . . both FSA and GCT credits."  (*Id.*)

---

[2]     The Court refers to Alkamel's August 19, 2022 filing as "Reply."

**B.      Respondent's Arguments**

In the Response, Respondent argues that Alkamel's Petition should be dismissed because: (1) Alkamel failed to exhaust his administrate remedies; (2) his request to have his FSA time credits calculated is moot; (3) his request to have his FSA time credits immediately applied to his sentence computation and percentage of statutory time served is premature; and (4) his request to have his full GCT credits immediately applied to his sentence computation is premature.  (Dkt. 6 at 1.)  Respondent also argues that an evidentiary hearing is unnecessary because this matter can be resolved on the record before the Court.  (*Id.* at 22.)

**1.      Exhaustion of Administrative Remedies**

According to Respondent, Alkamel did not exhaust his administrative remedies as he failed to file any formal administrative requests regarding his claims.  (*Id.* at 13-15.) Respondent also argues that exhaustion is not futile.  (*Id.* at 16.)

**2.      Alkamel's First Step Act Time Credits**

Respondent states in the Response that Alkamel is eligible to earn FSA time credits; that Alkamel has been scored a "Low on the [Prisoner Assessment Tool Targeting Estimated Risks and Needs ("PATTERN")] Risk Tool since his first assessment in February 2020"; and that Alkamel is currently on the waiting list for participating in or has completed the following evidence-based recidivism reduction ("EBRR") programs and productive activities ("PA"): "(1) Arthritis Foundation Walking; (2) Money Smart; (3) Managing your Diabetes; (4) Brain Health as You Age; (5) National Parenting Program, including Inside Out Dad; (6) Resolve Workshop;

4

(7) Drug Education; (8) Non-Residential Drug Abuse Program; and (9) VT Carpentry."
(*Id.* at 10-11 (citing Winger Decl., ¶¶ 4, 5, 9; Gov.t' Exs. B, D-H).)  According to
Respondent, Alkamel has "withdrawn from or declined the following EBRR Programs
and productive activities: (1) Hooked on Phonics; (2) Talking with Your Doctor; and
(3) Residential Drug Abuse Program."  (*Id.* at 11 (citing Winger Decl. ¶ 10; Gov't. Exs.
D, G).)

Respondent contends that FSA time credits "do not change 'the percent of
statutory term served' on an inmate's sentence computation."  (*Id.* at 11.)  According to
Respondent, as of May 20, 2022, Alkamel's sentence computation had been updated to
reflect 365 days of FSA time credits which has been applied towards an early release—
the maximum amount of time credits permitted to be applied under the FSA.  (*Id.*)
Respondent states that the "BOP's Central Office has determined that [Alkamel] has
earned an additional 70 days" of FSA time credits "which are eligible to be applied
toward time in a prerelease placement or on home confinement."  (*Id.*) (citing Winger
Decl., ¶ 13.)

    a.    **Mootness**

Respondent argues that Alkamel's request for the BOP to calculate the FSA time
credits he has earned is moot "because his sentence computation indicates the BOP
calculated he has 365 days of [FSA time credits] and the BOP's Central Office has
calculated he has earned an additional 70 days of [FSA time credits] as of June 25, 2022."
(*Id.* at 17-18 (citing Winger Decl. ¶¶ 12-13; Gov't. Ex. A at 3).)  Respondent contends
that none of the mootness exceptions apply.  (*Id.*)  According to Respondent, Alkamel

would continue to earn FSA time credits during the remainder of his imprisonment which

would not be reduced absent any disciplinary infractions.  (*Id.* at 18.)

### b.    Immediate Application

Respondent argues that Alkamel's claim for immediate application of his FSA

time credits should be dismissed as premature because his claim is hypothetical and is

therefore unripe.  (*Id.* at 18-19.)  Respondent contends that the FSA does not allow time

credits to be applied until the number of time credits an inmate has earned is equal to the

remainder of the inmate's term of imprisonment.  (*Id.*)  Respondent argues that

Alkamel's PATTERN score could increase before his FSA time credits equal the

remainder of his sentence, which would impact his ability to apply time credits to his

sentence, and that he could be subject to disciplinary actions prior to his time credits

being applied, resulting in a loss of time credits.  (*Id.* at 19-20.)  Respondent contends

that an inmate's time credits are not part of the time served component of an inmate's

sentence.  (*Id.* at 20.)  Respondent states that when Alkamel's total FSA time credits

equal the remainder of his sentence, the BOP "will determine if [Alkamel] meets the

criteria to transfer to a pre-release [residential reentry center] or home confinement

placement or to receive an early release."  (*Id.*) (citing 18 U.S.C. §§ 3632 (d)(4)(C),

3624(g).)

### 3.    Alkamel's Good Conduct Time

Respondent asserts that an inmate's "GCT vests on the date of the inmate's release

from custody."  (*Id.* at 11-12.)  Respondent states that Alkamel's sentence began on

January 29, 2020, the date he voluntarily surrendered to his designated facility, and that

he received one day of prior custody credit for July 30, 2018. (*Id.* at 12 (citing Hodge Decl. ¶¶ 14-15; Gov't. Exs. A, B).) According to Respondent, Alkamel earns 54 days of GCT for each year of his term of imprisonment and is projected to earn 283 days of GCT, which would vest on his release date. (*Id.*) Respondent argues that Alkamel's 283 days of GCT has been included in the percentage of statutory term he has served, resulting in a 54.2 percent of statutory term served as of May 20, 2022. (*Id.*) According to Respondent, because Alkamel's GCT does not vest until his projected release date, his claim for immediate application of his GCT should be dismissed as premature. (*Id.* at 20-21.)

## C.    Alkamel's Reply

In the Reply, Alkamel argues that pursuant to *Gallo v. Ortiz*, 2021 WL 571600 at *4, n. 8 (D.N.J. Feb. 16, 2021), he is not required to exhaust administrative remedies to assert his claims before this Court because his claims relate to "statutory construction." (Dkt. 10 at 3.) Alkamel states that he has now been credited with 365 days of FSA time credits which have been applied to his sentence, but that his full FSA time credits have not been applied and the 365 days were only credited to supervised release, instead of home confinement. (*Id.* at 1.) Alkamel contends that he has earned an additional 70 days as "the BOP admits" in its Response and that he is projected to earn an additional 261 days (or 8.7 months) of FSA time credits, which should be taken into consideration and immediately applied as earned so that he can be considered for home confinement. (*Id.* at 2-4.) As to his GCT credits, Alkamel argues that the BOP is not following its updated guidelines issued on March 14, 2022 regarding "GTC" which allows the BOP to credit

inmates with 54 days of GCT "for <u>each year</u> of actual time served." (*Id.*) Alkamel notes that he is not eligible for the Second Chance Act so the Court should order the BOP to apply his FSA time credits to prerelease custody, such as home confinement. (*Id.*) Alkamel contends he has a "written statement from [his] counselor . . . wherein the counselor states that 'You [Alkamel] are not on refuse status for any FSA needs.'" (*Id.*)

## II.    ANALYSIS

### A.    Exhaustion

Alkamel admits that he has not filed a formal grievance or sought an administrative remedy. (*See* Dkt. 1 at 2. (stating that he sought "[n]on-administrative" remedy by "talk[ing] with case managers and was told there was 'nothing they could do'").) In the Reply, Alkamel argues pursuant to the District of New Jersey *Gallo* decision, *supra*, that he was not required to exhaust administrative remedies because his claims relate to statutory construction. (Dkt. 10 at 3 (citing *Gallo*, 2021 WL 571600 at *4, n. 8).)

Generally, all federal prisoners must exhaust all available administrative remedies prior to seeking federal habeas corpus relief under 28 U.S.C. § 2241. *See United States v. Wilson*, 503 U.S. 329, 335 (1992); *see also Mathena v. United States*, 577 F.3d 943, 946 (8th Cir. 2009). However, because the concept of exhaustion for § 2241 petitions is judicially created and not mandated by statute, "sound judicial discretion governs." *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992) (citations omitted); *see also Lueth v. Beach*, 498 F.3d 795, 797 n.3 (8th Cir. 2007) (holding that failure to exhaust does not

affect a court's ability to decide case where "the exhaustion prerequisite for filing a 28 U.S.C. § 2241 petition is judicially created, not jurisdictional").

In determining whether to exercise its discretion, the Court "balance[s] the interest of the individual in retaining prompt access to a federal forum against countervailing institutional interests favoring exhaustion." *McCarthy*, 503 U.S. at 146, 148. Courts have concluded that the exhaustion requirement may be excused due to time constraints or where proceeding through the administrative remedy process would undoubtedly be an exercise in futility that could serve no useful purpose. *See Elwood v. Jeter*, 386 F.3d 842, 844 n.1 (8th Cir. 2004) (exhaustion requirement waived based on government's concession that "continued use of the [administrative] grievance procedure to contest the validity of the BOP's new policy would be futile").

Regarding Alkamel's home confinement claim, the balancing of interests does not favor excusing the exhaustion requirement because the home confinement program is highly individualized, and, as explained in Section II.B.3 below, the BOP is in the best position to determine whether Alkamel is eligible, and an appropriate candidate, for that program. Accordingly, the Court recommends that the Petition be denied for failure to exhaust administrative remedies with respect to Alkamel's home confinement claim, as well as denied for the reasons stated in Section II.B.3. *See Schlegel v. Rios*, No. 19-CV-338 (SRN/ECW), 2019 WL 3417053, at *2 (D. Minn. June 18, 2019), *R. & R. adopted*, No. 19-CV-338 (SRN/ECW), 2019 WL 3412207 (D. Minn. July 29, 2019) ("Here, Schlegel has not exhausted his administrative remedies for either his home confinement claim or his GTC claim, but the Court concludes that the exhaustion requirement should

be excused for Schlegel's GTC claim, but not the home confinement claim.") (citation omitted).

In the case of Alkamel's FSA and GCT claims, the balancing of interests favors having the issues raised by Alkamel promptly decided over the institutional interests protected by the exhaustion requirement, especially in light of the fact that the BOP has established its position as it relates to the effective date of the FSA and Alkamel's impending July 19, 2023 projected release date. *See id.* The Court therefore waives the exhaustion requirement and reaches the merits of those claims.

**B.      Alkamel's First Step Act Time Credits**

When read in conjunction with his Reply, the crux of Alkamel's claims in Grounds One, Three, and Four of the Petition is that he is entitled to the application of more than the 365 days of FSA time credits that have been calculated and applied by the BOP because as of June 25, 2022, he had earned 70 more days of time credits and is to earn an additional 15 days of credits every month thereafter.  (*See* Dkt. 1 at 6-8; *see also* Dkt. 10 at 1-4.)  Alkamel contends that he is projected to earn a total of an additional "261 days" or "8.7 months" of FSA time credits, which should be applied as earned so that he can be "immediately assessed for possible release to 'Home Confinement' or other eligible prerelease custody."  (Dkt. 10 at 3-4.)

**1.      FSA Requirements**

The FSA was signed into law on December 21, 2018, and provides, among other things that "[n]ot later than 210 days after the date of enactment of this subchapter, the Attorney General . . . shall develop and release publicly on the Department of Justice

website a risk and needs assessment system" to be used to "determine the recidivism risk of each prisoner . . . and classify each prisoner as having minimum, low, medium, or high risk for recidivism." 18 U.S.C. § 3632(a)(1).  On July 19, 2019, the Attorney General publicly released a risk and needs assessment system, stating the development of the PATTERN, which was updated in January 2020.  *See The First Step Act of 2018: Risk and Needs Assessment System*, U.S. Dep't of Justice Office of the Attorney Gen. (July 19, 2019), www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system.pdf; *see also The First Step Act of 2018: Risk and Needs Assessment System - UPDATE*, U.S. Dep't of Justice Office of the Attorney Gen. (January 2020), www.bop.gov/inmates/fsa/docs/the-first-step-act-of-2018-risk-and-needs-assessment-system-updated.pdf.

According to the FSA, the BOP then had 180 days from July 19, 2019 to "implement and complete" the PATTERN assessment for each prisoner.  *See* 18 U.S.C. § 3621 (h)(1)(A); *see also Manning v. Kallis*, No. 21-cv-160 (JRT/KMM), 2021 WL 4526653, at *1 (D. Minn. Sept. 9, 2021) ("The First Step Act next establishes January 15, 2020 as the deadline for the BOP to implement and complete the initial PATTERN assessment for each prisoner") (citing 18 U.S.C. § 3621(h)(1)).  The BOP was to provide

opportunities for prisoners to participate in EBRR[3] programs and PAs[4] and "provide incentives and rewards for prisoners" who complete those programs and activities, including "increased phone privileges, additional visitation time, transfer to prisons closer to prisoners' residence upon release, and, for prisoners who complete EB[R]R programs, 'time credits.'" *Manning*, 2021 WL 4526653, at *1 (citing 18 U.S.C. §§ 3632(d)(1), (d)(2), (d)(4)).

The BOP then had two years from the January 15, 2020 date, or until January 15, 2022, to "phase in" the EBRR programs and PAs for each prisoner. 18 U.S.C. § 3621(h)(2)(A); *see also Depoister v. Birkholz*, No. 21-cv-684 (ECT/BRT), 2021 WL 3492295, at *2 (D. Minn. Aug. 9, 2021). During the 2-year phase-in period, the BOP's "priority for such programs and activities shall be accorded based on a prisoner's proximity to release date" and the BOP may begin to expand any EBRR programs and PAs that exist at a prison and "**may** offer to prisoners who successfully participate in such programs and activities the incentives and rewards described in subchapter D." 18 U.S.C. §§ 3621(h)(3), (h)(4) (emphasis added).

---

[3] "An EBRR Program is a group or individual activity that has been shown by empirical evidence to reduce recidivism or is based on research indicating that it is likely to be effective in reducing recidivism; and is designed to help prisoners succeed in their communities upon release from prison." 28 C.F.R. § 523.41(a).

[4] "A PA is a group or individual activity that allows an inmate to remain productive and thereby maintain or work toward achieving a minimum or low risk of recidivating." 28 C.F.R. § 523.41(b).

An eligible inmate "may" earn FSA time credits "for programming and activities in which he or she participated from December 21, 2018, until January 14, 2020."  28 C.F.R. § 523.42(b)(2).  According to the BOP:

> [F]or inmate participation in programming during this period of time, the Bureau will exercise its discretion to award FSA Time Credits to inmates otherwise deemed eligible under the First Step Act by applying the same criteria as that applied to inmate participation in authorized EBRR programs or PAs recommended based on a risk and needs assessment after January 2020 to determine the inmate's retroactive Time Credit balance.  Eligible inmates will be afforded a presumption of participation for the period between December 21, 2018, and January 14, 2020 and be awarded Time Credits accordingly.

*See FSA Time Credits A Rule by the Prisons Bureau on 01/19/2022*, Federal Register, The Daily Journal of the United States Government, https://www.federalregister.gov/documents/2022/01/19/2022-00918/fsa-time-credits (last visited December 2, 2022).

Eligible prisoners that "successfully complete[] evidence-based recidivism reduction programming or productive activities" "shall earn 10 days of time credits for every 30 days of successful participation" in such programs or activities, and a prisoner that is determined by the BOP to be "at a minimum or low risk for recidivating, who, over 2 consecutive assessments, has not increased their risk of recidivism, shall earn additional 5 days of time credits for every 30 days of successful participation . . ."  18 U.S.C § 3632 (d)(4)(A)(i)(ii).  "'Successful participation' requires a determination by Bureau staff that an eligible inmate has participated in the EBRR programs or PAs that the Bureau has recommended based on the inmate's individualized risk and needs assessment, and has complied with the requirements of each particular EBRR Program or PA."  28 C.F.R. § 523.41(c)(2).

13

FSA time credits for inmates that successfully participate in EBRR programs or PAs "shall be applied toward time in prerelease custody or supervised release."  18 U.S.C. § 3632(d)(4)(C).  Prelease custody includes being placed in either home confinement or a residential reentry center.  18 U.S.C. § 3624(g)(2)(A)(B).  An inmate may lose FSA Credits "for violation of the requirements or rules of an EBRR Program or PA" and the inmate may appeal that loss "through the Bureau's Administrative Remedy Program."  28 C.F.R. § 523.43(a)(b).

An inmate that is eligible to apply his FSA Credits is someone who:

(A) has earned time credits under the risk and needs assessment system developed under subchapter D (referred to in this subsection as the "System") in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment;

(B) has shown through the periodic risk reassessments a demonstrated recidivism risk reduction or has maintained a minimum or low recidivism risk, during the prisoner's term of imprisonment;

(C) has had the remainder of the prisoner's imposed term of imprisonment computed under applicable law; and

(D) (i) in the case of a prisoner being placed in prerelease custody, the prisoner—

(I) has been determined under the System to be a minimum or low risk to recidivate pursuant to the last 2 reassessments of the prisoner; or

(II) has had a petition to be transferred to prerelease custody or supervised release approved by the warden of the prison, after the warden's determination that--

(aa) the prisoner would not be a danger to society if transferred to prerelease custody or supervised release;

(bb) the prisoner has made a good faith effort to lower their recidivism risk through participation in recidivism reduction programs or productive activities; and

(cc) the prisoner is unlikely to recidivate; or

(ii) in the case of a prisoner being placed in supervised release, the prisoner has been determined under the System to be a minimum or low risk to recidivate pursuant to the last reassessment of the prisoner.

18 U.S.C.A. § 3624(g)(1).

## 2.    Whether Alkamel's FSA Claim is Moot

The Court first considers Respondent's mootness argument.

"Article III of the United States Constitution only allows federal courts to adjudicate actual, ongoing cases or controversies.  The case-or-controversy requirement exists at all stages of federal judicial proceedings."  *Parish v. Marques*, Case No. 19-cv-1038 (NEB/TNL), 2019 WL 5654047, at *2 (D. Minn. Sept. 13, 2019) (quoting *Potter v. Norwest Mortg., Inc.*, 329 F.3d 608, 611 (8th Cir. 2003)) (citing U.S. Const. art. III, § 2)). "It is of no consequence that a claim was live at an earlier stage in the proceedings; a claim must be live when the court decides the issue.  The 'case or controversy' requirement is not met if 'the question sought to be adjudicated has been mooted by subsequent developments.'"  *Id.* (citations and quotations omitted).

"When, during the course of litigation, the issues presented in a case 'lose their life because of the passage of time or a change in circumstances . . . and a federal court can no longer grant effective relief,' the case is considered moot."  *Ali v. Cangemi*, 419 F.3d 722, 723 (8th Cir. 2005) (quoting *Haden v. Pelofsky*, 212 F.3d 466, 469 (8th Cir. 2000)).

When a case becomes moot, a federal court cannot "address the merits because any opinion [the court] would issue would be merely advisory." *In re Search Warrants Issued in Connection with Investigation of S. Cent. Career Ctr., W. Plains, Mo.* ("*In re Search Warrants*"), 487 F.3d 1190, 1192 (8th Cir. 2007) (citing *Haden*, 212 F.3d at 469).

In his Reply, Alkamel does not dispute the amount of FSA time credits that has been calculated by the BOP but instead, argues that all of his fully earned time credits should be applied immediately and that the credits he earns during the remainder of his imprisonment term should be applied as earned. (*See* Dkt. 10 at 1-4.) Accordingly, because Alkamel does not dispute how the BOP is calculating his FSA time credits or the amount of time credits the BOP has assessed to him, Grounds One, Three, and Four are moot to the extent they allege that the BOP is not calculating his FSA time credits.

However, a court should not dismiss a habeas claim as moot if any of the following exceptions apply:

> (1) secondary or 'collateral' injuries survive after resolution of the primary injury; (2) the issue is deemed a wrong capable of repetition yet evading review; (3) the defendant voluntarily ceases an allegedly illegal practice but is free to resume it at any time; or (4) it is a properly certified class action suit.

*Ahmed v. Sessions*, Case No. 16-CV-02124 (DSD/HB), 2017 WL 3267738, at *2 (D. Minn. July 11, 2017) (quoting *Riley v. I.N.S.*, 310 F.3d 1253, 1257 (10th Cir. 2002)), *R.&R. adopted*, 2017 WL 3268176 (D. Minn. July 31, 2017).

None of those mootness exceptions apply here, nor does Alkamel argue to the contrary. Alkamel has not identified any cognizable collateral consequences arising from his allegation that the BOP was not calculating his FSA time credits. Neither has

Alkamel provided anything to the Court to explain or show what programs he engaged in or completed in 2019 through 2022 for which he is entitled to time credits which are not included in the BOP's calculation. (*See generally*, Dkts. 1, 10.) Accordingly, the first exception to the mootness doctrine is inapplicable.

As to "a wrong capable of repetition yet evading review," that "exception applies if the matter is too short in duration to be fully litigated before it ends or expires and there is a reasonable expectation that [Petitioner] will be subjected to the same action again." *In re Search Warrants*, 487 F.3d at 1193. The record shows Alkamel's FSA time credits were calculated on May 20, 2022, before his Petition was brought in June 2022, and that the BOP is continuing to calculate his time credits. (*See* Dkt. 8 ¶ 13 (Winger Decl. stating "Alkamel has earned an additional 70 days of time credits as of June 25, 2022); *see also* Dkt. 8-1, Gov't. Ex. A at 3 (Alkamel's Public Inmate Data showing the computation was last updated on May 20, 2022).) Accordingly, it appears there is nothing further to litigate. *Ahmed*, 2017 WL 3267738, at *3 ("Because there is nothing further to litigate in Petitioner's case, [this] situation does not apply."). In any event, Alkamel would have the ability to bring a new habeas petition under a new set of facts and circumstances should he believe a re-calculation of his FSA time credits is required. Therefore, the second exception to the mootness doctrine does not apply here.

With respect to the third exception, there is nothing on the record to suggest that Respondent "voluntarily cease[d] an allegedly illegal practice" that it will resume "at any time." Thus, based on the record before the Court, the voluntary-cessation exception to the mootness doctrine does not apply here.

17

Finally, the Petition was brought on behalf of an individual Petitioner, not on behalf of a class of individuals, so the fourth exception also does not apply here. (*See* Dkt. 1.) Accordingly, the Court recommends dismissal of Grounds One, Three, and Four as moot to the extent they allege that the BOP is not calculating, or is improperly calculating, Alkamel's FSA time credits or that credits he earned in 2019 through 2022 were not included in the BOP's calculations.

The Court addresses the remainder of Alkamel's arguments in the subsequent section.

### 3.    Alkamel's Total Earned and Projected FSA Time Credits and Home Confinement

The Court next considers Alkamel's argument that his FSA time credits, if completely applied and applied as earned, would render him eligible for home confinement or other prelease custody. (Dkt. 10 at 3-4.)

Warden Eischen contends that Alkamel's claim is not ripe because his accrued time credits do not equal the remainder of his sentence and because Alkamel's Low PATTERN score could increase and he could be subjected to disciplinary action, thereby losing time credits. (Dkt. 6 at 18-20.)

"A court lacks subject matter jurisdiction over an action if the action is not ripe for resolution." *ASEA/AFSCME Local 52 Health Benefits Trust v. St. Jude Medical, LLC*, 362 F. Supp. 3d 642, 647 (D. Minn. 2019) (citing *Dakota, Minn. & E. R.R. Corp. v. S.D.*, 362 F.3d 512, 520 (8th Cir. 2004). "The doctrine of ripeness is basically a matter of timing, which requires (1) a sufficiently concrete case or controversy within the meaning

of Article III of the Constitution, and also (2) prudential considerations must justify the present exercise of judicial power." *Gopher Oil Co. v. Bunker*, 84 F.3d 1047, 1050 (8th Cir. 1996) (internal quotation marks and citation omitted). "Merely potential impairment of constitutional rights under a statute does not of itself create a justiciable controversy in which the nature and extent of those rights may be litigated." *Alexander v. Thornburgh*, 713 F. Supp. 1278, 1286 (D. Minn. 1989) (quoting *Communist Party v. Subversive Activities Control Bd.,* 367 U.S. 1, 71 (1961)). "To be ripe for decision, the harm asserted must have matured sufficiently to warrant judicial intervention." *National Bank v. First Premier Capital LLC*, Civ. No. 10-903 ADM/JJK, 2010 WL 11646824, at *2 (D. Minn. July 22, 2010) (citation omitted).

The exhibits submitted by Warden Eischen show the BOP has applied 365 days of FSA time credits to reduce Alkamel's sentence by one year. (*See* Dkt. 8-1, Gov't. Ex. 1 at 1-3.) However, Alkamel contends that his total earned time credits of 435 days (365 days earned as of May 20, 2022 plus the 70 days earned as of June 25, 2022), instead of just the 365 days, should be immediately applied and that his future earned credits should be applied as earned.

The Court has carefully reviewed the record. The record does not show that the BOP has acted in contravention of the FSA given that Alkamel has three years of supervised release imposed as part of his sentence (*see* Dkt. 7-1, Gov't. Ex. A at 2-3 (Alkamel's Public Inmate Data); *see also* Dkt. 7-3, Gov't. Ex. C at 1-3 (Alkamel's Criminal Judgment); 18 U.S.C. § 3624(g)(3) ("If the sentencing court included as a part of the prisoner's sentence a requirement that the prisoner be placed on a term of

supervised release after imprisonment pursuant to section 3583, the Director of the

Bureau of Prisons may transfer the prisoner to begin any such term of supervised release

at an earlier date, not to exceed 12 months, based on the application of time credits under

section 3632"); 28 C.F.R. § 523.44(d) (providing the criteria an inmate must meet for the

BOP to apply the inmate's FSA time credits towards early transfer to supervised release

under 18 U.S.C. § 3624(g)); *Mills v. Starr*, Civ. No. 21-1335 (SRN/BRT), 2022 WL

4084178, at *4 (D. Minn. Aug. 17, 2022) ("Early transfer to supervised release

effectively reduces an inmate's sentence by, at max, one year"); *Moore v. J. Rardin*, Case

No. 22-cv-2476 (NEB/TNL), 2022 WL 18542331, at *4-6 (D. Minn. Dec. 1, 2022)

(finding pursuant to 18 U.S.C. § 3624(g)(3) that the BOP had properly applied 365 days

of time credits the petitioner had earned to his sentence where the petitioner had earned a

total of 690 days of time credits but had a term of supervised release imposed as part of

his sentence and denying as premature petitioner's claim that his remaining 325 days

should be applied immediately to make him eligible for residential reentry center

placement or home confinement); *Burruss v. Hawkins*, Civ. No. H-22-2740, 2023 WL

319955, at *6-7 (S.D. Tex. Jan. 19, 2023) (finding the BOP properly applied and reduced

petitioner's sentence by 365 days from the 525 days of FSA time credits the petitioner

had been credited with where the petitioner had an 8-year term of supervised release to

follow her term of imprisonment and stating that the remainder of petitioner's credits, as

well as any additional credits earned while in prison, "will be applied to her time in pre-

release custody or on supervised release") (citing 18 U.S.C. § 3624(g)(3)).

Moreover, Alkamel's claim should be denied as moot as it appears Alkamel has received the relief requested in the Petition which is "to be assessed for 'Home Confinement' or other eligible prerelease custody." (*See* Dkt. 10 at 3-4.)  As previously stated, the BOP's Inmate Locator shows Alkamel is currently under the management of the Residential Reentry Management field office in Minneapolis, Minnesota, in accordance with Respondent's representation that at the time Alkamel's total FSA time credits equal the remainder of his sentence, the BOP "will determine if [Alkamel] meets the criteria to transfer to a pre-release [residential reentry center] or home confinement placement or to receive an early release." (*See* Dkt. 6 at 20); *see also Find an Inmate*, Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited February 9, 2023); 18 U.S.C. 3624(g)(1)(A) (stating that a prisoner is only eligible to apply FSA time credits when the prisoner "has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment."); 18 U.S.C. § 3632(d)(4)(C) (providing that an inmate's FSA time credits "shall be applied toward time in prerelease custody or supervised release"); 18 U.S.C. § 3624(g)(2)(A)(B) (stating prelease custody includes being placed in either home confinement or a residential reentry center).

Additionally, the Court notes it has no authority to order that Alkamel be placed in home confinement. *See United States v. Vang*, Crim. No. 16-277 (DWF/KMM), 2020 WL 4704875, at *2 (D. Minn. Aug. 13, 2020) ("[T]he BOP has exclusive authority to determine the placement of prisoners.  Neither the CARES Act nor the FSA alters this authority.") (collecting cases); *see also United States v. Kluge*, Crim. No. 17-61 (DWF),

2020 WL 209287, at *3 (D. Minn. Jan. 14, 2020) ("Nothing in the statutes amended by the FSA permits the Court to place Defendant in home confinement. Under the FSA, the authority to place a prisoner remains with the BOP."). These are additional reasons to deny these grounds insofar as Alkamel seeks home confinement, in addition to his failure to exhaust administrative remedies.

Accordingly, for all of these reasons, the Court recommends that Grounds One, Three, and Four be denied. *See Spencer v. Kemna*, 523 U.S. 1, 18 (1998) ("[M]ootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so").

## C.    Alkamel's Good Conduct Time Claim

Ground Two acknowledges that the BOP "added earned Good Credit Time as each year is served recognizing those credits against ones [sic] percentage of time served" and that Alkamel's "earned GCT credits have been applied for the years 2019, 2020, 2021 & 2022. These credits are included in petitioners['] term served calculation." (Dkt. 1 at 7-8.) However, in the Reply, Alkamel appears to take issue with Respondent's contention that an inmate's GCT does not vest until the date of the inmate's release from custody and contends that inmates are eligible to "receive up to 54 days of GCT credit[s] for each year of actual time served." (Dkt. 10 at 2.)

The FSA amended 18 U.S.C. § 3624. Pub. L. 115–391, § 102, 132 Stat. 5194, 5210, and provides that:

> [A] prisoner who is serving a term of imprisonment of more than 1 year other than a term of imprisonment for the duration of the prisoner's life, may receive credit toward the service of the prisoner's sentence, of up to 54 days

for each year of the prisoner's sentence imposed by the court, subject to determination by the Bureau of Prisons that, during that year, the prisoner has displayed exemplary compliance with institutional disciplinary regulations.

18 U.S.C. § 3624(b)(1).

While Alkamel is eligible to accrue and earn up to 54 days of GCT credits for each year of his sentence, the plain language of the statute shows his GCT does not vest until "the date [he] is released from custody." *See* 18 U.S.C. § 3624(b)(2) ("Notwithstanding any other law, credit awarded under this subsection after the date of enactment of the Prison Litigation Reform Act shall vest on the date the prisoner is released from custody."); *see also Simon v. Cruz*, Civ. No. 08-4804 (MJD/JJK), 2009 WL 1507548, at *3 (D. Minn. May 29, 2009) (noting that while "GCT credits are accrued, earned, and calculated on an annual basis, . . . they do not become 'vested' until the inmate is released from custody.") (citing 18 U.S.C. § 3264(b)(2)).

The exhibits submitted by Warden Eischen show that as of May 20, 2022, Alkamel had earned 108 days of GCT, with a total earned and projected GCT of 283 days. (*See* Dkt. 8-1, Ex. A at 3 (Alkamel's Public Inmate Data).) Alkamel does not dispute the number of GCT days the BOP attributes to him. (*See generally*, Dkts. 1, 10.) And the record before the Court does not show that Respondent is acting in contravention of the FSA.

Therefore, Alkamel's claim regarding his GCT is not ripe because his GCT does not vest until his release date. *See Manley v. Hendrix*, No. 2:20-CV-00119-BSM-JRT, 2020 WL 7122420, at *5 (E.D. Ark. Nov. 12, 2020) ("Regardless of the distinction

between 'earned' and 'non-vested' good conduct time, the Prison Litigation Reform Act makes clear that *none* of a prisoner's good conduct time actually 'vests' until he is released from custody"); *see also ASEA/AFSCME Local 52 Health Benefits Trust*, 362 F. Supp. 3d at 647 ("A court lacks subject matter jurisdiction over an action if the action is not ripe for resolution").

### D.   Evidentiary Hearing

Because the Court can resolve Alkamel's Petition by relying on the record, an evidentiary hearing is not necessary.  *Wallace v. Lockhart*, 701 F.2d 719, 729-30 (8th Cir. 1983) ("[D]ismissal of the habeas petition without a hearing is proper where . . . the dispute can be resolved on the basis of the record.") (citation omitted).

### III.   RECOMMENDATION

Based on the above, and on the files, records, and proceedings herein, **IT IS RECOMMENDED that**:

1. Malik Noaman Alkamel's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (Dkt. 1) be **DENIED**; and

2. This action be **DISMISSED WITH PREJUDICE**.


Dated: February 9, 2023                          *s/Elizabeth Cowan Wright*
                                                 ELIZABETH COWAN WRIGHT
                                                 United States Magistrate Judge

## **NOTICE**

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c)